### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **AGUSTIN DE LA NOVAL,** | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **3:14-CV-00460 (VLB)** |
| | : | |
| **v.** | : | |
| | : | |
| **PAPA'S DODGE,** | : | |
| **Defendant.** | : | **March 26, 2015** |

### MEMORANDUM OF DECISION GRANTING
### DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT,
### MOTION FOR MORE DEFINITE STATEMENT, AND MOTION TO STRIKE [Dkt. 27]

**I.**    **Introduction**

The Plaintiff, Agustin De La Noval ("De La Noval" or "Plaintiff") brings this

action against Defendant Papa's Dodge, Inc. ("Papa's Dodge" or "Defendant"),

alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, et

seq. (the "ADA") (Count I); Title VII of the Civil Rights Act, 42 U.S .C. § 2000 et

seq. ("Title VII") (Count II); the Connecticut Fair Employment Practices Act,

Connecticut General Statutes §§ 46a-58(a) et seq. ("CFEPA") (Count III); and

common law intentional infliction of emotional distress (Count IV).  Defendant has

moved to dismiss for failure to state a claim upon which relief may be granted

pursuant to Fed. R. Civ. P. 12(b)(6); for a more definite statement of paragraph 13

and Count III of Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(e);

and to strike paragraph 12 of Plaintiff's Amended Complaint pursuant to Fed. R.

Civ. P. 12(f).  For the reasons that follow, Defendant's Motion to Dismiss is

GRANTED, and Defendant's Motion for a More Definite Statement and Motion to

Strike are denied as moot.

II.   <u>Factual Background</u>

The following facts and allegations are taken from Plaintiff's Amended Complaint [Dkt. 24] and are assumed to be true for purposes of this Motion. However, the Court notes that the substantial majority of the Amended Complaint does not comply with Federal Rule of Civil Procedure 8, which requires that a complaint consist of "a short and plain statement of the claim showing that the pleader is entitled to relief" and that it "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (citing Fed. R. Civ. P. 8(a)(2) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Instead, the Amended Complaint is replete with irrelevant information about certain matters, while suffering from a gross lack of detail in other places where such detail would be necessary to establish the essential elements of Plaintiff's claims.

Plaintiff Mr. De La Noval is an individual residing at 545 Chimney Sweep Hill Road, Glastonbury, Connecticut.  [Dkt. 24 at ¶ 2.]  Defendant Papa's Dodge is an "active, domestic, stock company" incorporated under the laws of the state of Connecticut with a business address of 585 East Main Street, New Britain, Connecticut.  [*Id.* at ¶ 3.]  Plaintiff alleges that he began working at Papa's Dodge on April 11, 1988 as an Automotive Technician.  [*Id.* at ¶ 8.]  Between 1988 and the date of Plaintiff's alleged termination on May 23, 2012, Plaintiff alleges that he held several positions within Papa's Dodge.  [*Id.*]  Specifically, Plaintiff alleges that he was promoted to "Shop Foreman" in the mid-1990s, and then became a "Service Advisor" in 1998 "due to an internal reorganization."  [*Id.*]  Plaintiff

further alleges that in 2000, he then became an "Assistant Manager/Service Advisor." [*Id.*]  When Papa's Dodge opened a new facility in November 2005, Plaintiff alleges that he again became a Service Advisor, where he remained until he was allegedly terminated in 2012.  [*Id.*]

Plaintiff alleges several disparate grievances against Papa's Dodge, each of which the Court will summarize here.  Plaintiff first alleges that in October 2011, Plaintiff's supervisor Mr. William Vetre ("Mr. Vetre") accused Plaintiff of failing to cut a key for a customer who had requested an extra key for his wife's car.  [*Id.* at ¶¶ 9–10.]  Plaintiff alleges that Papa's Dodge's policy was that employees were not permitted to cut spare car keys if the requesting customer was not named on the car's registration, and that in this instance, the customer's identification and registration did not match.  [*Id.* at ¶ 10.]  As a result, it appears that Plaintiff allegedly refused to cut the key, for which Mr. Vetre allegedly threatened to write Plaintiff up for insubordination.  [*Id.*]  Plaintiff alleges that he nevertheless "refused to comply with a directive that would violate Defendant's policy." [*Id.*]

Plaintiff then alleges that sometime during the next month, November 2011, Plaintiff developed pneumonia and was out of work for two weeks.  [*Id.* at ¶ 11.] While Plaintiff was out of work, Defendant allegedly implemented a new software system for the Service Advisors.  [*Id.*]  Plaintiff alleges that when Plaintiff returned to work, all of the service advisors had been trained on the new system, and that "Plaintiff was not trained on the new system when he returned to work." [*Id.*]

3

Plaintiff next alleges that on April 16, 2012, Plaintiff was injured on the job when he rolled back in a chair and the wheels on the chair fell into "holes in the floor". [*Id.* at ¶ 12.]  Plaintiff alleges that when he "was catapulted airborne off the chair, his right knee hit the service counter hard and he landed on his buttocks on the floor." [*Id.*]  Plaintiff alleges that he stood up and "got back to work" after the fall but that he was "in a lot of pain," which was "coming from the center of Plaintiff's back and down the left leg." [*Id.*]  When Plaintiff reported to work the next day and told Mr. Vetre that he was still in a lot of pain in his lower back and left leg, Mr. Vetre directed him to fill out an accident report and Plaintiff was sent to "Concentra," a "third-party administrator for injuries on the job," where he was required to obtain a medical examination. [*Id.*]  Plaintiff alleges that Concentra prescribed him muscle relaxers, pain killers, anti-inflammatories and physical therapy for what was believed to be a sprained back. [*Id.*]  Later that same day, Plaintiff alleges that he went back to work, and it appears that after this day he continued to work despite his injury. [*Id.*]

Plaintiff alleges that as a result of his injury, for which he received one month of physical therapy, he "could not sleep in bed or lay down because of the pain" in his spine and left leg. [*Id.*]  Plaintiff describes this pain as "intense" and claims that "sitting or standing for too long a period of time was very painful" and that Plaintiff's coworkers would comment on the difficulty Plaintiff was having "on a daily basis." [*Id.*]  Plaintiff also alleges that at some unspecified point, Concentra referred Plaintiff to an orthopedic surgeon who gave Plaintiff a shot of cortisone in his back. [*Id.*]  Plaintiff alleges that as of the date of the Amended

4

Complaint, which was filed approximately three months after his injury, Plaintiff was still receiving treatment from the orthopedic surgeon on his back, and that the surgeon "recommended an epidural on Plaintiff's back before recommending surgery," but that despite this epidural, Plaintiff "still has chronic pain." [*Id.*] Plaintiff also alleges that he received a cortisone shot and an MRI of his right knee, although he does not allege that his right knee is the cause of any of the pain and discomfort he describes. [*Id.*]

Without any explanation or elaboration, Plaintiff states that following this injury, "Plaintiff was harassed and retaliated against by Defendant over the subjects of Pricing Discounts, Friends and Family Discounts and a United States Post Office Repair Order for Body Work." [*Id.* at ¶ 13.] Plaintiff summarily denies that any of his "actions concerning these subjects violated Defendant's policy." [*Id.*] Plaintiff then alleges that "Defendant terminated Plaintiff's employment on May 23, 2012." [*Id.* at ¶ 14.] Plaintiff claims that these "adverse employment actions," which Plaintiff seems to believe were taken against him as a result of his injury, have caused him to "suffer past and future economic, physical and emotional harm," including "severe, ongoing emotional distress." [*Id.* at Counts I–III at ¶¶ 15–16, Count IV at ¶ 19.]

III.    Standard of Review

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual

5

allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the

complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005)(MRK).

IV.   <u>Discussion</u>

As an initial matter, the Court notes that although Defendant's Motion to Dismiss raises substantive legal bases for dismissing each claim, the Plaintiff's objection largely fails to respond to these grounds.  Instead, Plaintiff restates facts alleged in the Amended Complaint and summarily asserts that he should be allowed to maintain his claims without establishing their legal sufficiency. Nonetheless, the Court must address Defendant's assertions and review them in light of the allegations of the Amended Complaint and Plaintiff's objection, and ascertain whether the challenged claims are sufficiently pled.

A.  Count I: Discrimination under the Americans with Disabilities Act

Plaintiff alleges that he "was disabled within the meaning of the ADA . . . was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation, and . . . suffered an adverse employment action because of his disability."  [Dkt. 24 at Count I, ¶¶ 15–16.]  Defendant moves to dismiss this claim on the ground that Plaintiff has not sufficiently alleged a

"disability" under the ADA, because he has not alleged facts establishing that his April 2012 injury substantially limited a "major life activity."  [Dkt. 28 at 8–10.]

The ADA provides in relevant part that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the . . . discharge of employees, . . .  job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The ADA defines discrimination on the basis of disability as, among other things, "limiting, segregating, or classifying a[n] . . . employee in a way that adversely affects the opportunities or status of such . . . employee because of the disability of such . . . employee."  *Id.* at § 12112(b)(1).

To allege a prima facie case of discrimination under the ADA, a plaintiff must show "(a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." *Brady v. Wal–Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).  A plaintiff suffers an "adverse employment action" under the ADA when "he or she endures a materially adverse change in the terms, privileges, duration and conditions of employment."  *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) (internal quotation marks omitted). "Examples of materially adverse employment actions include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished

8

material responsibilities . . . .'" *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).

It is axiomatic that "[i]n order to qualify as an individual with a disability under the ADA plaintiff must: (1) have 'a physical or mental impairment that substantially limits one or more of the major life activities of such individual;' (2) have 'a record of such an impairment'; or (3) be 'regarded as having such an impairment.'" *Bryant v. Greater New Haven Transit Dist.*, 8 F. Supp. 3d 115, 139 (D. Conn. 2014) (citing *Mitchell v. Girl Scouts of the U.S.A.*, No. 98 CV 3730, 2003 WL 22705121, at *5 (S.D.N.Y. Nov. 17, 2003)). "Not every impairment is a disability within the meaning of the ADA; rather, there are two requirements: the impairment must limit a major life activity and the limitation must be substantial." *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005).

The regulations to the ADA define the phrase "major life activities" as those basic functions such as "'caring for oneself, performing manual tasks . . . walking, standing, lifting, bending, speaking, breathing, and working,' as well as 'the operation of a major bodily function,' including 'neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.'" *Hutchinson v. Ecolab, Inc.*, No. 3:09cv1848(JBA), 2011 WL 4542957, at *8 (D. Conn. Sept. 28, 2011) (quoting Pub. L. No. 110–325, 122 Stat. 3553, 3555 (2008)). In determining whether a limitation is "substantial," courts should look to the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact of or the expected long-term impact of or

resulting from the impairment.  29 C.F.R. § 1630.2(j)(2); *see  Capobianco*, 422 F.3d at 57.  "A temporary impairment lasting only a few months is, by itself, too short in duration to be substantially limiting." *De La Rosa v. Potter*, 427 F. App'x 28, 29 (2d Cir. 2011) (citing *Adams v. Citizens Advice Bureau*, 187 F.3d 315, 316–17 (2d Cir. 1999) (internal quotation marks omitted)).

The Court finds that Plaintiff has not pled sufficient facts indicating that his back injury substantially limited one or more major life activities.  Plaintiff alleges that sitting or standing for "too long" a period of time was very painful.  [Dkt. 24 at ¶ 12.]  However, sitting or standing for an indeterminate amount of time does not reasonably constitute a "major life activity" as that term is used under the ADA.  *See*, *e.g.*, *Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 643–45 (2d Cir. 1998) (holding that difficulty standing "at attention" for "any period of time," standing "in one spot," standing "for a long period of time," and need to perform sedentary work does not indicate a substantial limitation in the ability to stand); *Hopkins v. Digital Equip. Corp.*, 93-CV-8468(JSM), 1998 WL 702339, at *10 (S.D.N.Y. Oct. 7, 1998) (holding that plaintiff's inability to stand for a prolonged period did not establish an impairment that would substantially limit a major life activity); *Beason v. United Technologies Corp.*, 213 F. Supp. 2d 103, 110 (D. Conn. 2002) ("A belief that one cannot stand for longer than two hours, can only perform sedentary work, and has difficulty keeping his [neck] extended or flexed for long periods of time does not constitute a belief that one is severely restricted in his ability to stand as compared with the average person.").

Plaintiff also alleges without elaboration that he "could not sleep in bed or lay down" because of his pain.  [Dkt. 24 at ¶ 12.]  Although the Second Circuit has held that sleep is "undoubtedly a major life activity," Plaintiff's vague allegation does not provide any facts to support the inference that Plaintiff's inability to lie down was long-lasting enough to produce the kind of chronic, profound insomnia typically required to establish a substantial limitation on this major life activity. *See Colwell*, 158 F.3d at 643–44 (holding that because "[d]ifficulty sleeping is extremely widespread," a plaintiff must show "that his affliction is . . . worse than is suffered by a large portion of the nation's adult population."); *cf Felix v. New York City Transit Auth.*, 154 F. Supp. 2d 640, 654 (S.D.N.Y. 2001), *aff'd*, 324 F.3d 102 (2d Cir. 2003).  Plaintiff's allegation of "chronic" pain, by itself, is insufficient to establish that his inability to lie down was permanent or long-term: it is the limitation on the claimed major life activity, not the mental or physical condition that causes it, that must be permanent or have a long-term impact in order to be "substantial."  *See Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002) (holding that diagnosis alone does not establish a disability within the meaning of the ADA; the impairment's impact must also be permanent or long-term).[1]

---

[1] Plaintiff attempts to re-amend his Amended Complaint through his opposition brief by adding additional claims that Plaintiff's injury has substantially limited the major life activities of "his ability to concentrate at work" and "to not feel stressful and anxious" [sic] due to his chronic pain.  [Dkt. 30 at 4.]  Plaintiff cannot amend his complaint in his memorandum.  *See, e.g., MacGillivray v. Whidden*, No. 3:04CV1523(CFD), 2006 WL 587593, at *3 (D. Conn. Mar. 10, 2006).  Moreover, even if the Court did consider these claims, they would do nothing to cure the deficiencies in the Amended Complaint.

Courts have held that "dismissal is appropriate where a plaintiff fails to allege how an impairment limits a major life activity." *Baptista v. Hartford Bd. of Educ.*, 427 Fed. App'x 39, 42 (2d Cir. 2011) ("But while Baptista conclusorily alleges that his firing constituted discrimination on the basis of his alcoholism or HIV-positive status, in none of his complaints did he describe how either impairment limited any major life activity—a requirement for a condition to constitute a disability for purposes of the laws on which he relies."); *Hedges v. Town of Madison*, 456 Fed. App'x 22, 24 (2d Cir. 2012) (rejecting Plaintiff's argument that the district court should have inferred that plaintiff was disabled because he alleged that he suffered from a variety of medical conditions such as Lyme Disease and holding that "even the most liberal standard of pleadings does not require a court to make such inferences ... Assuming the most minimal of notice pleading standards, a plaintiff is still required to give fair notice to the defendants of the factual bases for his claims."). Consequently, dismissal is appropriate here.

Furthermore, even if Plaintiff had adequately alleged a "disability" as that term is defined by the ADA, Plaintiff's Amended Complaint is completely devoid of factual content regarding the adverse employment actions Defendant allegedly took as a result of Plaintiff's alleged disability. Plaintiff's conclusory claim that after his injury, Plaintiff "was harassed and retaliated against by Defendants" over such vague and inscrutable subjects as "Pricing Discounts" and "a United

12

States Post Office Repair Order for Body Work" utterly fails to put Defendant on notice of the nature of the allegations against it.  [Dkt. 24 at ¶ 13.][2]

Moreover, Plaintiff's allegations of retaliation and termination provide no basis upon which to infer a causal connection—or any connection at all—between Plaintiff's alleged mistreatment and his alleged disability.  To the extent that Plaintiff is alleging retaliation under the ADA, he is required to show that: "(1) the plaintiff participated in a protected activity under the ADA; (2) the defendant knew of the protected activity; (3) the plaintiff experienced an adverse employment action; and (4) *a causal connection* exists between the protected activity and the adverse employment action."  *See Treglia*, 313 F.3d at 719 (emphasis added).  Plaintiff does not allege that he attempted to assert his rights against discrimination or engaged in any other protected activity under the ADA, and the Amended Complaint provides no basis for inferring that Defendant's alleged actions were undertaken with the requisite retaliatory intent.  *Id.*  To the extent that Plaintiff is alleging discriminatory discharge, Plaintiff must show that "he was fired because of his disability."  *Reeves v. Johnson Controls World Servs.*, Inc., 140 F.3d 144, 149-50 (2d Cir. 1998).  Plaintiff has failed to allege any

---

[2] Defendant has moved for a more definite statement as to this paragraph of the Amended Complaint, on the grounds that Plaintiff has failed to allege "the conduct by the defendant" forming the basis of plaintiff's harassment and retaliation claim.  [Dkt. 28 at 11.]  Plaintiff addressed Defendant's motion by "elaborating" upon these allegations in his opposition brief.  [Dkt. 30 at 5–6.]  Plaintiff's attempt to amend his complaint through his memorandum—especially by introducing a litany of irrelevant detail that nonetheless fails to shed light on the nature of Defendant's conduct or its connection to Plaintiff's disability—is both improper and futile.  *See MacGillivray*, 2006 WL 587593, at *3.

facts tending to suggest that Defendant dismissed Plaintiff because of his back injury.

Because the Amended Complaint cannot support a prima facie case of disability discrimination under either theory, Count I of the Complaint is DISMISSED.

B. Count II: Discrimination under Title VII

Plaintiff also alleges that Defendant is liable under Title VII for regarding Plaintiff "as a person who was limited from working and retaliat[ing] against Plaintiff by subjecting Plaintiff to an adverse employment action when Defendant terminated Plaintiff's employment as pretext based on an actual or perceived disability of Plaintiff."  [Dkt. 24, Count II at ¶ 15.]  Defendant moves to dismiss Count II of Plaintiff's Amended Complaint on the ground that the sole basis of Plaintiff's Title VII claim is disability discrimination, which is not a colorable claim under Title VII.  [Dkt. 28 at 7–8.]

Defendant is correct.  Title VII makes it unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Disability is not a protected class under Title VII, and that statute does not provide a remedy for employment discrimination based on disability.  *See, e.g., Milione v. City Univ. of New York*, 950 F. Supp. 2d 704, 710 (S.D.N.Y. 2013), *aff'd*, 567 Fed. App'x 38 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 964 (2015).  Plaintiff's Title VII claim is dismissed.

14

## C.  Counts III and IV: State Law Claims

Having dismissed both federal law claims against the Defendant, the Court declines to exercise its supplemental jurisdiction over the Plaintiff's state law claims for intentional infliction of emotional distress and violation of the Connecticut Fair Employment Practices Act.  "Supplemental or pendent jurisdiction is a matter of discretion, not of right.  Thus, the court need not exercise supplemental jurisdiction in every case."  *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 165–66 (D. Conn. 2005) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 715–26 (1966)).  "The federal court should exercise supplemental jurisdiction and hear a state claim when doing so would promote judicial economy, convenience and fairness to the litigants.  The court should decline to exercise supplemental jurisdiction, however, when state law issues would predominate the litigation or the federal court would be required to interpret state law in the absence of state precedent.  In addition, the court may decline to exercise supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction."  *Id.* (citing 28 U.S.C. § 1367(c)(3)); *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims").

Because in granting Defendant's Motion to Dismiss Counts I and II of the Amended Complaint, the Court has dismissed Plaintiff's claims over which it has

original jurisdiction, this Court declines to exercise supplemental jurisdiction over Counts III and IV, both of which arise under state law and are analyzed under different standards.  *See Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP*, 869 F. Supp. 2d 378, 401 (S.D.N.Y. 2012) (citing *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d. Cir.1994) ("Under 28 U.S.C. 1367(a)(c), a Court has the discretion to exercise supplemental jurisdiction over pendent state law claims.  If, however, 'the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'").

V.   Conclusion

For the foregoing reasons, Defendants' [Dkt. 27] Motion to Dismiss Plaintiff's Amended Complaint is GRANTED, and Defendant's Motion for More Definite Statement and Motion to Strike are denied as moot.  The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 26, 2015